**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| J&B PARTNERS MANAGEMENT | ) | Case No. 15-22017 (RDD) |
| LLC, *et al.* | ) | |
| | ) | |
| | ) | Jointly Administered. |
| Debtors. | ) | |
| | ) | |

**INTERIM ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION**
**FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (Ill) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION LENDER, AND (IV) GRANTING**
**LIENS AND SUPERPRIORITY CLAIMS**

Upon consideration of the Motion (the "Financing Motion"), dated January 6, 2015, filed

in the above-captioned jointly administered bankruptcy cases (the "Bankruptcy Cases") of J & B

PARTNERS MANAGEMENT LLC, a New York limited liability company, J & B

RESTAURANT PARTNERS OF LONG ISLAND HOLDING CO., LLC, a New York limited

liability company, J & B RESTAURANT PARTNERS OF NYDMA LLC, a New York limited

liability company, J & B RESTAURANT PARTNERS OF MASSAPEQUA PARK, LLC, a

New York limited liability company, J & B RESTAURANT PARTNERS OF MIDDLE

ISLAND, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF

SHIRLEY, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF

LONG ISLAND, LLC, a New York limited liability company, J & B RESTAURANT

PARTNERS OF LONG ISLAND II, LLC, a New York limited liability company, J & B REAL

ESTATE PARTNERS OF LONG ISLAND, LLC, a New York limited liability company, J & B

REAL ESTATE PARTNERS OF LONG ISLAND II, LLC, a New York limited liability

company, and J & B RESTAURANT PARTNERS OF NJ, LLC, a New York limited liability

company, the debtors and debtors-in-possession (collectively, the "Debtors"), for authority to execute the DIP Agreement (defined below), pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364, with General Electric Capital Corporation ("GE Capital" or "DIP Lender") and provide adequate protection; and upon the record of the interim hearing held by the Court on the Motion on January 8, 2015 (the "Interim Hearing"); and upon consideration of the evidence and the arguments of counsel; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **The Petition Date.**    On January 6, 2015 (the "Petition Date") the Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession and control of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Cases.

B.    **Jurisdiction and Venue.**    This Court has jurisdiction to hear the Financing Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). Consideration of the Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Bankruptcy Cases and proceedings on the Financing Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Notice.**    Notice of the Interim Hearing and the relief requested in the Financing Motion has been provided by the Debtors as set forth in the Financing Motion and at the Interim Hearing. Under the circumstances, such notice of the Interim Hearing and the interim relief requested in the Financing Motion constitutes due, sufficient and appropriate notice and

complies with section 102(1) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001(b), and applicable local rules.

D.    **The Prepetition Loans.**  On September 26, 2008, December 23, 2009, September 23, 2011 and September 30, 2011, GE Capital, other lender parties thereto (collectively with GE Capital, the "Prepetition Lender"), and the Debtors entered into various loan agreements (collectively, as amended, supplemented, amended and restated, or otherwise modified through the date hereof, the "Prepetition Loan Documents"; the Prepetition Obligations thereunder, the "Prepetition Loans" and the collateral securing the Prepetition Loans, the "Prepetition Collateral").   True and correct copies of the Prepetition Loan Documents are retained by Prepetition Lender and the Debtors, and will be available to interested parties upon request. Without prejudice to the rights of any official committee of unsecured creditors (any such committee, if formed, the "Committee") or any other holder of an unsecured claim (if no Committee is appointed) as set forth below, the Debtors agree that the Prepetition Loan Documents are genuine, valid, existing, and legally enforceable.

E.    **The Prepetition Liens.**   Subject to paragraph 22 hereof, pursuant to the Prepetition Loan Documents and applicable law, the Debtors agree that Prepetition Lender holds valid, enforceable, and allowable claims against the Debtors, as of the Petition Date, in an aggregate amount equal to at least $15,716,924 in unpaid principal, including accrued but unpaid interest, plus any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to Prepetition Lender under the Prepetition Loan Documents and applicable law (including all professional fees that are chargeable or reimbursable under the Prepetition Loan Documents now or hereafter due under the Prepetition Loan Documents) (collectively, the

"Prepetition Claims").[1]  Subject to paragraph 22 hereof, the Debtors agree that Prepetition

Lender holds perfected first priority liens and security interests (the "Liens") in, inter alia, the

Prepetition Collateral, as more fully described in the Prepetition Loan Documents, as security for

the payment and performance of the Debtors' obligations under the Prepetition Loan Documents.

### F.    Enforceability of Obligations Arising Under Prepetition Loan Documents.

Subject to paragraph 22 hereof, the Debtors, individually and on behalf of the Debtors'

bankruptcy estates ("Bankruptcy Estates"), admit, agree and stipulate that the obligations of the

Debtors under the Prepetition Loan Documents are (a) legal, valid, binding, and enforceable

against each of the Debtors and the Bankruptcy Estates, and (b) not subject to any contest, attack,

objection, recoupment, defense, counterclaim, offset, subordination, re-characterization,

avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy

Code, under applicable non-bankruptcy law or otherwise.  Subject to paragraph 22 hereof, the

Debtors do not have, hereby forever release, and are forever barred from bringing any claims,

counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Claims,

whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise,

against Prepetition Lender and its respective affiliates, subsidiaries, agents, officers, directors,

employees and attorneys.

### G.    Enforceability of Liens and Security Interests Granted Pursuant to the Prepetition Loan Documents.  Subject to paragraph 22 hereof, the Debtors, individually and on

behalf of the Bankruptcy Estates, admit, agree and stipulate that the Liens are legal, valid,

---

[1] The amounts set forth herein are provided by the Debtors and have not been adopted by Prepetition Lender.  Prepetition Lender may rely on this filing as if it were a proof of claim, and in such an instance, the Debtors shall acknowledge the claims set forth herein, as if they were submitted by way of a proof of claim.  Prepetition Lender shall have the right, but not the obligation, to subsequently file a proof of claim with the amounts that it shows as due and owing on the Petition Date.  Prepetition Lender and any Committee appointed each reserve all of their respective rights in connection with the claim amount.

enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the date hereof, there are no liens or security interests having priority over the Liens.

    **H.**  <u>**Need for Post-Petition Financing.**</u> An immediate need exists for the Debtors to obtain funds in order to continue operations and to administer and preserve the value of the Bankruptcy Estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of their assets and maximize the return for all creditors requires the availability of working capital under the terms of the debtor-in-possession financing transaction described in the Senior Secured Superpriority Debtor-In-Possession Credit Agreement substantially in the form attached hereto as Exhibit A (the "<u>DIP Agreement</u>")[2].  The debtor-in-possession financing transaction described in the DIP Agreement shall hereinafter be referred to as the "<u>DIP Facility</u>".  The DIP Facility and the documents and instruments governing the DIP Facility shall hereinafter be referred to as the "<u>DIP Financing Documents</u>".  In the absence of the availability of such funds in accordance with the terms hereof and the DIP Agreement, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, the Bankruptcy Estates, their creditors and equity holders would occur.

    **I.**  <u>**No Credit Available on More Favorable Terms.**</u> The Debtors have been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or (b) credit with priority over any or all administrative

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Agreement.

expenses of the kind specified in sections 503(b) or 507(b), in each case, on more favorable

terms and conditions than those set forth in the DIP Agreement and this Interim Order.

      **J.**    **Use of Proceeds of the DIP Facility.**  Proceeds of the DIP Facility (net of any

amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used

in a manner consistent with the DIP Agreement, the DIP Financing Documents, and this Interim

Order.

      **K.**    **Business Judgment and Good Faith Pursuant to Section 364(e).**  The terms

and conditions of the DIP Facility, as set forth in the DIP Financing Documents, and the fees

paid and to be paid thereunder (i) are fair, reasonable, and the best available under the

circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with

their fiduciary duties; and (iii) are supported by reasonably equivalent value and consideration.

The DIP Facility was negotiated in good faith and at arm's length between the Debtors and GE

Capital.  GE Capital has indicated its willingness to provide financing to the Debtors pursuant to

the DIP Financing Documents.   The funds to be extended under the DIP Facility will be

extended by GE Capital in good faith, and for valid business purposes and uses by the Debtors,

and, as a consequence, GE Capital is entitled to the protection and benefits afforded by section

364(e) of the Bankruptcy Code.  The DIP Superpriority Claim (as defined herein), the DIP Liens

(as defined herein) and other protections granted pursuant to this Interim Order (and the Final

DIP Order), the DIP Financing Documents and the DIP Facility will not be affected by any

subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final DIP

Order, as provided in section 364(e) of the Bankruptcy Code.

      **L.**    **Relief Essential; Best Interests.**  The relief requested in the Financing Motion

(and as provided in this Interim Order) is necessary, essential, and appropriate for the continued

operation of the Debtors' businesses and management and preservation of the Bankruptcy Estates.  It is in the best interests of the Bankruptcy Estates that the Debtors be allowed to obtain credit pursuant to the DIP Facility and the DIP Financing Documents.

    **M.**    **Entry of Interim Order.**    For the reasons stated above, the Debtors have requested and are entitled to immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

    **NOW, THEREFORE,** upon the Financing Motion and the record before this Court with respect to the Financing Motion, including the record made during the Interim Hearing, and good and sufficient cause appearing therefor,

    **IT IS HEREBY ORDERED** that:

    1.    **Motion Granted.**    The Financing Motion is granted on an interim basis to the extent and in accordance with the terms and conditions set forth in this Interim Order.   Any objections to the Financing Motion with respect to the entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein (but subject to all reservation of rights included herein), if any, are hereby denied and overruled.

    2.    **DIP Financing Documents.**

    (a)    **Approval of Entry into the DIP Financing Documents.**    The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform in accordance therewith, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors in connection with the DIP Facility and the creation and perfection of the liens and security interests granted pursuant to the DIP Financing Documents (the "DIP Liens" and together  with the Liens, the "GE Capital Liens") described in

and provided for by this Interim Order and the DIP Financing Documents.  The Debtors are hereby authorized and directed to do and perform all acts, satisfy all obligations, and to pay all principal, interest, fees, expenses and other amounts described in the DIP Financing Documents as such become due (collectively with all other obligations under and as defined in the DIP Financing Documents, the "DIP Obligations"), which amounts shall not otherwise be subject to further approval of this Court.  Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of the Debtors in accordance with their terms enforceable against the Debtors and the Bankruptcy Estates.

(b)    **Authorization to Borrow on an Interim Basis.**    Subject to, and in accordance with, the terms and conditions of the DIP Financing Documents, the Debtors are immediately authorized to borrow between the date of entry of this Interim Order and the date of the Final DIP Hearing (as defined herein) (the "Interim Period") up to $1,000,000 (the "Interim DIP Facility Amount").

(c)    **Use of the Interim DIP Facility Amount.**    The Interim DIP Facility Amount advanced by GE Capital to the Debtors thereafter shall be used by the Debtors in the amounts and for the purposes identified in the Budget attached hereto as Exhibit B (the "Interim Period Budget") to (i) pay related transaction costs, fees and expenses of the DIP Facility in accordance with the DIP Financing Documents; and (ii) fund ongoing working capital needs of the Debtors, including payments of administrative expenses incurred by the Debtors.   All advances by GE Capital to the Debtors of the Interim Facility Amount during the Interim Period shall be subject to the Interim Period Budget.

(d)    **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents.**  "Cash Collateral" shall have the meaning ascribed to it in section 363 of the

Bankruptcy Code.  During the Interim Period, pursuant to section 363 of the Bankruptcy Code, Debtors are hereby expressly authorized to use Cash Collateral and the proceeds of the Interim DIP Facility Amount in the amounts and for the purposes identified in the Interim Period Budget, including to (i) pay related transaction costs, fees and expenses of the DIP Facility in accordance with the DIP Financing Documents; and (ii) fund ongoing working capital needs of the Debtors, including payments of administrative expenses incurred by the Debtors.

(e)  **Conditions Precedent.**  During the Interim Period, GE Capital shall have no obligation to make any loan or any other financial accommodations under the DIP Financing Documents unless the conditions precedent to make such loans or financial accommodations under the DIP Financing Documents have been satisfied in full or waived in accordance with the DIP Financing Documents.  For avoidance of doubt, no loans or other extensions of credit will be available to the Debtors (i) unless GE Capital and the Debtors execute and deliver the DIP Financing Documents, and (ii) in excess of the Interim DIP Facility Amount, until entry of a final order authorizing the Borrowers to borrow the full amount of the DIP Facility in accordance with the DIP Financing Documents (the "Final DIP Order").

(f)  **DIP Superpriority Claim.**  Provided that GE Capital advances the Interim DIP Facility Amount, effective immediately upon the entry of this Interim Order, and subject to the terms of the DIP Financing Documents, GE Capital, as adequate protection and security for the obligations of the Debtors under the DIP Facility and the DIP Financing Documents, is hereby granted (x) a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code superior to any and all administrative expenses in the Bankruptcy Cases, including, without limitation, any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited

to, sections 105, 326, 328, 330, 331, 503(b) 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code (the "DIP Superpriority Claim"); provided, however, that the DIP Superpriority Claim shall be subordinate to: (i) all unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), including any interest thereon payable pursuant to 31 U.S.C. § 3717; plus (ii) an amount equal to the allowed fees and expenses of retained professionals of the Debtors ("Debtor Professional Fees") incurred before the delivery of a Carve-Out Trigger Notice (as defined below) that are ultimately allowed by final order of the Court (whether allowed before or after the delivery of such notice), but solely to the extent the same are incurred in accordance with the Budget on a cumulative basis with respect to each professional; plus (iii) all allowed Debtor Professional Fees that are incurred from and after the delivery of a Carve-Out Trigger Notice in an aggregate amount of not more than $50,000; plus (iv) an amount not to exceed $10,000 for the allowed fees and expenses of the chapter 7 trustee in the event any of the Bankruptcy Cases of these Debtors are converted to cases under chapter 7 of the Bankruptcy Code after the occurrence of a Carve-Out Trigger Notice (collectively, the "Carve-Outs"). The "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Lender to counsel for the Debtors following the occurrence of an Event of Default expressly stating that the Carve-Out Expenses have been triggered (the "Carve-Out Trigger Notice").

(g)    **DIP Liens.** As and for security of the DIP Obligations, GE Capital is granted the following security interests and liens against the assets of the Debtors, all of which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable (collectively, the "DIP Liens"): (i) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority Lien on all assets of the Debtors that are unencumbered as of the commencement of the Cases (other than Avoidance Actions) and all proceeds therefrom;

(ii) pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected Lien on all other assets of the Debtors (other than Avoidance Actions), junior only to the valid, perfected and non-avoidable Liens on such assets as of the Petition Date and to valid Liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code and all proceeds therefrom; and (iii) subject to any valid pre-petition Liens other than Liens granted under the Prepetition Loan Documents, pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and 503(b) of the Bankruptcy Code, a claim and Liens on any pre-petition and post-petition improvements.   The foregoing property described in paragraphs (i), (ii), and (iii) above shall hereinafter be referred to as the "DIP Collateral;" and, collectively with the Prepetition Collateral, and any replacement liens granted in connection with the use of cash collateral, the "Collateral."   Notwithstanding anything contained herein, any successful challenge under paragraph 22 hereof shall have no effect on or with respect to the DIP Superpriority Claim or DIP Liens.

(h)    **Authorization to Perfect Liens.**    GE Capital shall be and hereby is authorized to take any action it deems necessary or appropriate to perfect the liens and security interests granted to GE Capital pursuant to the DIP Financing Documents and this Interim Order, including but not limited to filing financing statements, all of which shall be deemed to have been filed on the date of entry of this Order.

(i)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to (i) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to GE Capital under and in connection with the DIP Financing Documents, the DIP Facility and this Interim Order, and (ii) authorize GE Capital to retain and apply payments hereunder.

3.      **DIP Lien Priority and DIP Collateral.**  The DIP Liens shall have the priorities set forth in this Interim Order and, except as may otherwise be expressly set forth herein, shall in each and every instance, subject to the Carve-Outs and the Prior Liens, be first priority senior liens.  The DIP Liens shall secure all of the Debtors' obligations under the DIP Financing Documents and the DIP obligations.  Subject to the Carve-Outs and/or the Prior Liens, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Bankruptcy Cases and shall be valid and enforceable against any trustee appointed in the Bankruptcy Cases, upon the conversion of any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of any of the Bankruptcy Cases.  Without prejudice to the rights under paragraph 22 hereof, the GE Capital Liens, the DIP Obligations and the Prepetition Claims and any proceeds, products, offspring or profits of any of the foregoing, shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code.

4.      **Maturity**.  The DIP Facility will mature (the "Maturity Date") on the DIP Facility Termination Date.  All obligations and liabilities of the Debtors to GE Capital that remain outstanding or are in existence on the last day of the term of the DIP Facility shall be due and payable on the last day of the Maturity Date.

5.      **Enforceable Obligations**.  Without prejudice to the rights under paragraph 22 hereof, the DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, the Bankruptcy Estates and any successors thereto and their creditors, in accordance with their terms.

6.       **Use of Interim Facility Amount**.  From and after the date hereof, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Documents, this Interim Order and the Interim Period Budget.

7.       **Superpriority Administrative Claim Status**.  The DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute the DIP Superpriority Claim and be payable from and have recourse to all DIP Collateral.  Other than as provided in the DIP Financing Documents and this Interim Order and subject to the Carve-Outs, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Superpriority Claims or the DIP Obligations, or with any other claims of GE Capital arising hereunder.

8.       **Adequate Protection**.  Upon the entry of this Interim Order, and subject to the terms of the DIP Financing Documents, Prepetition Lender is hereby granted, as adequate protection to the extent of any diminution in the value of the Prepetition Collateral as of the Petition Date, including but not limited to any diminution in value resulting from (i) the use of the Prepetition Cash Collateral pursuant to section 363(a) of the Bankruptcy Code, (ii) the use, sale or lease of Prepetition Collateral (other than the Prepetition Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, or (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, in the form of (a) the reimbursement of all reasonable and documented fees and expenses incurred by Professionals for the Prepetition Lender

including, without limitation, the reasonable disbursements of counsel and any financial consultant, advisor or expert (the "Lender Professional Fees"), (b) a lien immediately junior to the lien granted to the Lender on the DIP Collateral, (c) subject to the Carve-out Expenses, a superpriority claim under section 507(b) of the Bankruptcy Code, (d) engagement by the Debtors of the CRO; (e) completion of the Exit Milestones and (f) subject to section 363(k) of the Bankruptcy Code to the extent applicable, credit bidding rights in favor of the Prepetition Lender in connection with the sale of any of the Debtors' assets, whether conducted pursuant to section 363 or section 1129(b)(2)(A) of the Bankruptcy Code or otherwise.  Notwithstanding anything in this paragraph 8 to the contrary, in the event that no plan substantially consistent with the Plan Term Sheet (as defined in and attached as Exhibit C to the *Declaration of Dawn Petite, Chief Operating Officer of the Debtors in Support of Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 14]) is confirmed in these Bankruptcy Cases, the Lender Professional Fees may be reallocated by order of the Bankruptcy Court in a manner consistent with section 506(b) of the Bankruptcy Code.

9.      **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents**.  Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Financing Documents, and in a manner consistent with the Interim Period Budget (as the same may be modified, supplemented or updated from time to time with the agreement of GE Capital consistent with the terms and conditions of the DIP Financing Documents), the Debtors are authorized to use the advances under the DIP Financing Documents.  The Debtors' rights to use the extensions of credit under the DIP Financing Documents shall terminate upon the earlier of (i) the occurrence of an Event of Default in accordance with the provisions of paragraph 19 hereof, or (ii) upon the occurrence of the Maturity Date.  Nothing in this Interim Order shall

authorize the disposition of any assets of the Debtors or the Bankruptcy Estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted under the DIP Facility and the DIP Financing Documents (subject to any required court approval).

10.   **Monitoring of Collateral.**   GE Capital shall be permitted to retain consultants and financial advisors at the expense of the Debtors (subject to the rights of all parties in interest to object to the amounts thereof as set forth in paragraph 21 herein), and GE Capital and its consultants and advisors shall be given reasonable access to the Collateral and the DIP Collateral.

11.   **Financial Reporting.**   The Debtors shall provide Prepetition Lenders and GE Capital with all financial and other reporting in full compliance with the Prepetition Loan Documents and the DIP Financing Documents.

12.   **DIP Lien Perfection**.   This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Lien or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, GE Capital may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code for the limited purpose of making such filings, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of this Interim Order.  The Debtors shall execute and deliver to GE Capital all such financing statements, mortgages, security agreements, notices and other

documents as GE Capital may reasonably request to evidence, confirm, validate or perfect, or to

insure the contemplated priority of, the DIP Liens.  GE Capital, in its sole discretion, may file a

photocopy of this Interim Order as a financing statement with any recording officer designated to

file financing statements or with any registry or recorder of deeds or similar office in any

jurisdiction in which any of the Debtors has real or personal property, and in such event, the

subject filing or recording officer shall be authorized to file or record such copy of this Interim

Order.  To the extent that Prepetition Lender is the secured party under any account control

agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured

party under any of the Prepetition Loan Documents, GE Capital as DIP Lender shall also deemed

to be the secured party under such account control agreements, loss payee under the Debtors'

insurance policies and the secured party under each such document, shall have all rights and

powers attendant to that position (including, without limitation, rights of enforcement) and shall

act in that capacity and distribute any proceeds recovered or received in accordance with the

terms of this Interim Order and the other DIP Financing Documents.

13.    **Payment of Compensation**.  Nothing herein shall be construed as consent to the

allowance of any professional fees or expenses of any of the Debtors or any official committee

including, without limitation, the Committee, or shall affect the right of GE Capital to object to

the allowance and payment of such fees and expenses.

14.    **Waiver of Claims and Causes of Action.**  Without prejudice to the rights set

forth in paragraph 22 below, all claims and causes of action of the Debtors against Prepetition

Lender on account of the Prepetition Claims and Prepetition Loan Documents or otherwise,

including, but not limited to, any claims for preference, fraudulent conveyance or other claims

arising under the Bankruptcy Code, and any and all claims regarding the validity, priority,

perfection or avoidability of the Prepetition Claims or the Liens are hereby released, relinquished and waived.

15.    **No Additional Liens**.  Except for the Carve-Outs, from and after entry of this Interim Order, unless GE Capital has provided its prior written consent or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order to GE Capital.

16.    **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of any part of this Interim Order, if at any time prior to the indefeasible repayment in full in cash of all DIP Obligations, the Bankruptcy Estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Documents, all of the cash proceeds derived from such credit or debt and all cash collateral shall immediately be turned over to GE Capital in reduction of the DIP Obligations in accordance with the relative rights, claims, and priorities specified herein and in the DIP Financing Documents.

17.    **Disposition of DIP Collateral.**  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent (by email or otherwise) of GE Capital (which shall not be unreasonably withheld or delayed) required under the applicable DIP Financing Documents, except for sales of inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing

Documents and this Interim Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law.

18.    **Events of Default.**  Subject to the provisions of the DIP Financing Documents and this Interim Order, unless and until all DIP Obligations are indefeasibly paid in full either in cash or by the issuance of the GE Note (as defined in the *Summary of Plan Terms*, dated January 6, 2015 and filed by the Debtors on the Petition Date) (or other arrangements for payment of such amounts satisfactory to GE Capital (in GE's sole discretion) have been made), the protections afforded GE Capital pursuant to this Interim Order and under the other DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a chapter 11 plan or converting these Cases into a case under chapter 7, and the DIP Liens and the DIP Superpriority Claim shall continue in these cases and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priority as provided by this Interim Order.

19.    **Rights and Remedies Upon Occurrence of Event(s) of Default.**  Upon the occurrence of an Event of Default, and after giving any notice and/or opportunity to cure required by the DIP Agreement, GE Capital may settle an order (the "Default Order") on no less than seven (7) days' notice to the Debtors, the US Trustee, any Committee and any other party in interest requesting notice that identifies the applicable Event of Default and provides, among other things, that: (a) the automatic stay under section 362(a) of the Bankruptcy Code shall be deemed lifted, vacated, modified and terminated with respect to GE Capital; and (b) GE Capital shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Documents (unless within such five (5) day period the Bankruptcy Court determines that no default has occurred and is continuing), including, without limitation, (i) to terminate any

obligations of GE Capital under the DIP Financing Documents and/or demand payment, and seek enforcement, of the DIP Obligations then outstanding, and (ii) to take any action, in its sole discretion, necessary to preserve and protect the GE Capital Collateral.  Notwithstanding the immediately preceding sentence, immediately following the giving of notice by GE Capital of the occurrence of an Event of Default:  (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of GE Capital Collateral to GE Capital as provided in the DIP Financing Documents; (ii) GE Capital shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Documents; and (iii) any obligation otherwise imposed on GE Capital to provide any loan or advance to the Debtors pursuant to the DIP Financing Documents shall immediately be suspended.  Notwithstanding anything contained in this Interim Order or the Final Order to the contrary, the Debtors shall have the right to continue to utilize Cash Collateral until and unless the Default Order has been entered, subject to all of the other terms and provisions contained in any order governing such use.  Furthermore, subject to all of above provisions of this paragraph, upon the entry of the Default Order, GE Capital is authorized to exercise its remedies pursuant to the DIP Financing Documents and applicable law.   All proceeds realized in connection with the exercise of the rights and remedies of GE Capital shall be applied to the DIP Obligations and the Prepetition Claims under, and in accordance with the provisions of, the DIP Financing Documents.

20.    **Good Faith Under Section 364(e); No Modification or Stay of this Interim Order.**  GE Capital is extending credit pursuant to the Order in "good-faith" within the meaning of section 364(e) of the Bankruptcy Code, and the credit extended by GE Capital pursuant to this Order, and in connection with the DIP Facility and the DIP Financing Documents shall be deemed to be extended in good faith within the meaning of section 364(e) of the Bankruptcy

Code and GE Capital is entitled to the protections afforded by section 364(e) of the Bankruptcy Code and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens, rights, claims, or priority authorized or created hereby.  Notwithstanding any such potential modification, amendment or vacation, any liens, rights, claims or priorities granted to GE Capital hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens and DIP Superpriority Claims granted to GE Capital shall be governed in all respects by the original provisions of this Interim Order, and GE Capital shall be entitled to all of the rights, liens, priorities remedies, privileges and benefits, including the DIP Liens and DIP Superpriority Claims granted herein, with respect to any such claim.  Because the loans made pursuant to the DIP Financing Documents are made in reliance on this Interim Order, the obligations owed GE Capital prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result or any subsequent order in the Bankruptcy Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to GE Capital under this Interim Order and/or the DIP Financing Documents.

21.    **Expenses of Secured Creditor.**  As provided in the DIP Financing Documents, the Debtors shall pay all reasonable and documented out-of-pocket expenses incurred by the DIP Lender (including, without limitation, the reasonable and documented fees and disbursements of counsel for the DIP Lender, any other local or foreign counsel that the DIP Lender shall retain and any internal or third-party appraisers, consultants and auditors advising the DIP Lender), including in connection with the preparation, execution, delivery and administration of the DIP Financing Documents; provided, however, that the legal fees and expenses of counsel to the DIP

Lender (on a going forward basis commencing on the Petition Date) shall not exceed $75,000 in the aggregate.  Payment of such fees shall not be subject to allowance by the Bankruptcy Court and shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that GE Capital shall submit copies of its legal counsel's invoices to the Debtor, the U.S. Trustee and any Committee and such parties shall have twenty (20) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any invoice submitted by GE Capital.  Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection, and provide the specific basis for the objection to each such item or category.  If any such objection is not resolved within ten (10) days, a hearing with respect thereto shall be conducted at the next regularly scheduled omnibus hearing in the Bankruptcy Cases.

22.    **Binding Effect.**  The provisions of this Interim Order shall be binding upon and shall inure to the benefit of GE Capital, the Debtors, the Bankruptcy Estates and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Bankruptcy Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.  Notwithstanding anything contained in this paragraph or this Order to the contrary, however, the waivers and agreements contained in this Interim Order concerning, among other things, the Prepetition Loan Documents, the Prepetition Claims, the Liens, and the Collateral shall not apply to a Committee (or, if no Committee is appointed, the holder of an unsecured claim) if within: (i) ninety (90) days from the engagement of any counsel for the Committee, or (ii) if no counsel or no Committee is appointed, within one hundred twenty (120) days following the Petition Date, the Committee (or, if no Committee is appointed, any holder of

an unsecured claim) shall have commenced an adversary proceeding for the purpose of

challenging the validity, extent, priority, perfection or enforceability of the Prepetition Loan

Documents, the Prepetition Claims, the Liens, or the Prepetition Collateral.  In the event a

Committee is appointed, such Committee shall be entitled to use not more than $50,000 of

proceeds of the DIP Facility to investigate Liens or claims in accordance with this paragraph 22,

but in no event shall any DIP Proceeds be used to fund such Committee's objection or challenge

to any such claims or Liens.  To the extent any such adversary proceeding is not timely

commenced, all such waivers shall apply to all interested parties in the Bankruptcy Cases and all

interested parties shall be forever bound by all such waivers.  Further, to the extent that any

waiver contained in this Interim Order is not expressly challenged in any such adversary

proceeding, all interested parties in these Bankruptcy Cases shall be forever bound by such

waiver.

23.    **No Waiver.**  The failure of GE Capital to seek relief or otherwise exercise their

rights and remedies under the DIP Financing Documents, the DIP Facility, this Interim Order or

otherwise, as applicable, shall not constitute a waiver of any of GE Capital's rights hereunder,

thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise

impair any of the rights or remedies of GE Capital under the Bankruptcy Code or under non-

bankruptcy law, including without limitation, the rights of GE Capital upon an Event of Default

(i) to request conversion of any or all of the Bankruptcy Cases to cases under chapter 7, dismissal

of the Bankruptcy Cases, or the appointment of a trustee in the Bankruptcy Cases, or (ii) to

propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan, or

(iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of

GE Capital, including against any non-Debtor entity.    Neither the commencement of the

Bankruptcy Cases nor the entry of this Interim Order shall limit or otherwise modify the rights

and remedies of Prepetition Lender upon an Event of Default with respect to non-Debtor entities

or third parties or their respective assets, whether such rights and remedies arise under the

Prepetition Loan Documents, applicable law or equity.

24.    **No Third Party Rights.**    Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

25.    **Section 552(b).**    GE Capital shall be entitled to all of the rights and benefits of

section 552(b) of the Bankruptcy Code.    In connection with the Final DIP Order, the Debtors

intend to seek a finding that and the "equities of the case" exception under section 552(b) of the

Bankruptcy Code does not apply to the GE Capital Liens and the Prepetition Claims and/or any

proceeds, products, offspring or profits of any of the foregoing.

26.    **Amendment.**    Between the date hereof and the date of entry of the Final DIP

Order, the DIP Financing Documents may not be modified in any material respect without

further order of the Bankruptcy Court.    Upon entry of the Final DIP Order, the Debtors and GE

Capital may amend, modify, supplement or waive any provision of the DIP Financing

Documents without further approval of the Bankruptcy Court but on prior written notice to

counsel for a Committee, unless such amendment, modification, supplement or waiver (x)

increases the interest rate (other than as a result of the imposition of the default rate), (y)

increases the commitments of GE Capital under the DIP Financing Documents, or (z) changes

the Maturity Date (as defined in the DIP Financing Documents) or otherwise materially

adversely affect the Debtors or the Bankruptcy Estates.    Except as otherwise provided herein, no

waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and GE Capital and approved by the Bankruptcy Court.

27.    **Survival of Interim Order.**   The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Bankruptcy Cases, (ii) converting any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Bankruptcy Cases, (iv) withdrawing the reference of any of the Bankruptcy Cases from the Bankruptcy Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Bankruptcy Cases in the Bankruptcy Court.  The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order and the DIP Financing Documents and any protections granted GE Capital, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claims and protections for GE Capital shall maintain their priority as provided by this Interim Order until all the DIP Obligations and the Prepetition Claims have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).  The DIP Obligations shall not be discharged by the entry of an order confirming a chapter 11 plan the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

28.    **Inconsistency.**   In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Interim Order, the provisions of the this Interim Order shall govern and control.

29. **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof

30. **No Waivers or Modification of this Interim Order.** The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of GE Capital and no such consent shall be implied by any other action, inaction or acquiescence of GE Capital.

31. **Waiver of any Applicable Stay, including Bankruptcy Rule 6004(h).** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

32. **Final Hearing.** The final hearing to consider entry of the Final DIP Order is scheduled for January 21, 2015, at 10:00 a.m. (ET) at the Bankruptcy Court (the "Final DIP Hearing").

33. On or before January 12, 2015, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final DIP Hearing (the "Final DIP Hearing Notice"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to Committee counsel. The Final DIP Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than 12:00 noon (ET) on January 20, 2015), which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors; (b) counsel for GE Capital; (c) counsel for the Committee; and (d) the US Trustee, with a copy to the Court's chambers.

34.    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction

to enforce this Interim Order according to its terms.

Dated:  White Plains, New York
        January 9, 2015

                                    /s/ Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit A to Interim Order**

DIP Credit Agreement

**Exhibit B to Interim Order**

Budget