**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| J&B PARTNERS MANAGEMENT | ) | Case No. 15-22017 (RDD) |
| LLC, *et al.* | ) | |
| | ) | |
| | ) | Jointly Administered. |
| Debtors. | ) | |
| | ) | |

_____

### FINAL ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER, AND (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS

Upon consideration of the Motion, dated January 6, 2015 (the "Financing Motion"), filed in the above-captioned jointly administered bankruptcy cases (the "Bankruptcy Cases") of J & B PARTNERS MANAGEMENT LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF LONG ISLAND HOLDING CO., LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF NYDMA LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF MASSAPEQUA PARK, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF MIDDLE ISLAND, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF SHIRLEY, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF LONG ISLAND, LLC, a New York limited liability company, J & B RESTAURANT PARTNERS OF LONG ISLAND II, LLC, a New York limited liability company, J & B REAL ESTATE PARTNERS OF LONG ISLAND, LLC, a New York limited liability company, J & B REAL ESTATE PARTNERS OF LONG ISLAND II, LLC, a New York limited liability company, and J & B RESTAURANT PARTNERS OF NJ, LLC, a New York limited liability

1

company, the debtors and debtors-in-possession (collectively, the "Debtors"), for authority to execute the DIP Agreement (defined below), pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364, with General Electric Capital Corporation ("GE Capital" or "DIP Lender"); and hearings having on the Motion been held on January 8, 2015 (the "Interim Hearing") and January 21, 2015 (the "Final Hearing" and, together with the Interim Hearing, the "Hearings"); and this Court having previously entered the Interim Order Approving Debtors' Motion for Entry of Interim and Final Orders (i) Authorizing Debtors to Obtain Postpetition Financing; (ii) Authorizing Use of Cash Collateral; (iii) Granting Adequate Protection to Prepetition Lender, and (iv) Granting Liens and Superpriority Claims [Dkt No. 27] (the "Interim Order"); and upon consideration of the evidence and the arguments of counsel; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **The Petition Date.**    On January 6, 2015 (the "Petition Date") the Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession and control of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Cases.

B.    **Jurisdiction and Venue.**    This Court has jurisdiction to hear the Financing Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). Consideration of the Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Bankruptcy Cases and proceedings on the Financing Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2

C.    **Notice.**  Notice of the Hearings and the relief requested in the Financing Motion has been provided by the Debtors as set forth in the Financing Motion.  Such notice constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001(b), and applicable local rules.

D.    **The Prepetition Loans.**  On September 26, 2008, December 23, 2009, September 23, 2011 and September 30, 2011, GE Capital, other lender parties thereto (collectively with GE Capital, the "Prepetition Lender"), and the Debtors entered into various loan agreements (collectively, as amended, supplemented, amended and restated, or otherwise modified through the date hereof, the "Prepetition Loan Documents"; the Prepetition Obligations thereunder, the "Prepetition Loans" and the collateral securing the Prepetition Loans, the "Prepetition Collateral").  True and correct copies of the Prepetition Loan Documents are retained by Prepetition Lender and the Debtors, and will be available to interested parties upon request. Without prejudice to the rights of any official committee of unsecured creditors (any such committee, if formed, the "Committee") or any other holder of an unsecured claim (if no Committee is appointed) as set forth below, the Debtors agree that the Prepetition Loan Documents are genuine, valid, existing, and legally enforceable.

E.    **The Prepetition Liens.**  Subject to paragraph 24 hereof, pursuant to the Prepetition Loan Documents and applicable law, the Debtors agree that Prepetition Lender holds valid, enforceable, and allowable claims against the Debtors, as of the Petition Date, in an aggregate amount equal to at least $15,716,924 in unpaid principal, plus accrued but unpaid interest, plus any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to Prepetition Lender under the Prepetition Loan Documents and applicable law

(including all professional fees that are chargeable or reimbursable under the Prepetition Loan Documents now or hereafter due under the Prepetition Loan Documents) (collectively, the "Prepetition Claims").[1]   Subject to paragraph 24 hereof, the Debtors agree that Prepetition Lender holds perfected first priority liens and security interests (the "Liens") in, inter alia, the Prepetition Collateral, as more fully described in the Prepetition Loan Documents, as security for the payment and performance of the Debtors' obligations under the Prepetition Loan Documents.

### F.      Enforceability of Obligations Arising Under Prepetition Loan Documents.

Subject to paragraph 24 hereof, the Debtors, individually and on behalf of the Debtors' bankruptcy estates ("Bankruptcy Estates"), admit, agree and stipulate that the obligations of the Debtors under the Prepetition Loan Documents are (a) legal, valid, binding, and enforceable against each of the Debtors and the Bankruptcy Estates, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.   Subject to paragraph 24 hereof, the Debtors do not have, hereby forever release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Claims, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against Prepetition Lender and its respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

---

[1] The amounts set forth herein are provided by the Debtors and have not been adopted by Prepetition Lender.  Prepetition Lender may rely on this filing as if it were a proof of claim, and in such an instance, the Debtors shall acknowledge the claims set forth herein, as if they were submitted by way of a proof of claim.  Prepetition Lender shall have the right, but not the obligation, to subsequently file a proof of claim with the amounts that it shows as due and owing on the Petition Date.  Prepetition Lender and any Committee appointed each reserve all of their respective rights in connection with the claim amount.

G.    **Enforceability of Liens and Security Interests Granted Pursuant to the
Prepetition Loan Documents.**  Subject to paragraph 24 hereof, the Debtors, individually and on
behalf of the Bankruptcy Estates, admit, agree and stipulate that the Liens are legal, valid,
enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset,
recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy
law or otherwise and, as of the date hereof, there are no liens or security interests having priority
over the Liens.

H.    **Need for Post-Petition Financing.**  An immediate need exists for the
Debtors to obtain funds in order to continue operations and to administer and preserve the value
of the Bankruptcy Estates.  The ability of the Debtors to finance their operations, to preserve and
maintain the value of their assets and maximize the return for all creditors requires the
availability of working capital under the terms of the debtor-in-possession financing transaction
described in the Senior Secured Superpriority Debtor-In-Possession Credit Agreement
substantially in the form attached to the Interim Order as Exhibit A (the "DIP Agreement")[2].
The debtor-in-possession financing transaction described in the DIP Agreement shall hereinafter
be referred to as the "DIP Facility".  The DIP Facility and the documents and instruments
governing the DIP Facility shall hereinafter be referred to as the "DIP Financing Documents".  In
the absence of the availability of such funds in accordance with the terms hereof and the DIP
Agreement, the continued operation of the Debtors' businesses would not be possible, and
serious and irreparable harm to the Debtors, the Bankruptcy Estates, their creditors and equity
holders would occur.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP
Agreement.

5

**I.**    **No Credit Available on More Favorable Terms.**    The Debtors have been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or (b) credit with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b), in each case, on more favorable terms and conditions than those set forth in the DIP Agreement and this Order.

**J.**    **Use of Proceeds of the DIP Facility.**    Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used in a manner consistent with the DIP Agreement, the DIP Financing Documents, and this Order.

**K.**    **Business Judgment and Good Faith Pursuant to Section 364(e).**    The terms and conditions of the DIP Facility, as set forth in the DIP Financing Documents, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arm's length between the Debtors and GE Capital.  GE Capital has indicated its willingness to provide continued financing to the Debtors pursuant to the DIP Financing Documents.  The funds advanced, and to be advanced, under the DIP Facility will be advanced by GE Capital in good faith for valid business purposes and uses by the Debtors, and, as a consequence, GE Capital is entitled to the protection and benefits afforded by section 364(e) of the Bankruptcy Code.  The DIP Superpriority Claim (as defined herein), the DIP Liens (as defined herein) and other protections granted pursuant to this Order (and the Interim Order), the DIP Financing Documents and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order (or the Interim Order), as provided in section 364(e) of the Bankruptcy Code.

**L.    Relief Essential; Best Interests.**    The relief requested in the Financing Motion (and as provided in this Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and management and preservation of the Bankruptcy Estates.  It is in the best interests of the Bankruptcy Estates that the Debtors be allowed to obtain credit pursuant to the DIP Facility and the DIP Financing Documents.

**M.    Entry of Order.**    This Order is entered after notice and a hearing in accordance with Bankruptcy Rule 4001.

**NOW, THEREFORE,** upon the Financing Motion and the record before this Court with respect to the Financing Motion, including the record made during the Hearings, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    **Motion Granted.**    The Financing Motion is granted.  Any objections to the Financing Motion to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein (but subject to all reservation of rights included herein), if any, are hereby denied and overruled.

2.    **DIP Financing Documents.**

(a)    **Approval of Entry into the DIP Financing Documents.**    To the extent not already accomplished in accordance with the Interim Order, the Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform in accordance therewith, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors in connection with the DIP Facility and the creation and perfection of the liens and security interests granted pursuant to the DIP Financing Documents (the "**DIP**

Liens" and together with the Liens, the "<u>GE Capital Liens</u>") described in and provided for by the

DIP Financing Documents.  The Debtors are hereby authorized and directed to do and perform

all acts, satisfy all obligations, and to pay all principal, interest, fees, expenses and other amounts

described in the DIP Financing Documents as such become due (collectively with all other

obligations under and as defined in the DIP Financing Documents, the "<u>DIP Obligations</u>"),

which amounts shall not otherwise be subject to further approval of this Court.  The DIP

Financing Documents represent valid and binding obligations of the Debtors in accordance with

their terms enforceable against the Debtors and the Bankruptcy Estates.

(b)    **Authorization to Borrow.**  Subject to, and in accordance with, the terms

and conditions of the DIP Financing Documents, the Debtors are immediately authorized to

borrow up to $1,500,000 through the DIP Facility Termination Date.

(c)    **Use of the DIP Facility.**  The DIP Facility advanced by GE Capital to the

Debtors shall be used by the Debtors in the amounts and for the purposes identified in the Budget

to (i) pay related transaction costs, fees and expenses of the DIP Facility in accordance with the

DIP Financing Documents; and (ii) fund ongoing working capital needs of the Debtors, including

payments of administrative expenses incurred by the Debtors.  All advances by GE Capital to the

Debtors under the DIP Facility shall be subject to the Budget.

(d)    **Authorization to Use Cash Collateral and Proceeds of DIP Financing**

**Documents.**  "Cash Collateral" shall have the meaning ascribed to it in section 363 of the

Bankruptcy Code.  Prior to the DIP Facility Termination Date, pursuant to section 363 of the

Bankruptcy Code, Debtors are hereby expressly authorized to use Cash Collateral and the

proceeds of the DIP Facility in the amounts and for the purposes identified in the Budget,

including to (i) pay related transaction costs, fees and expenses of the DIP Facility in accordance

8

with the DIP Financing Documents; and (ii) fund ongoing working capital needs of the Debtors,

including payments of administrative expenses incurred by the Debtors.

(e)    **Conditions Precedent.** GE Capital shall have no obligation to make any

loan or any other financial accommodations under the DIP Financing Documents unless the

conditions precedent to make such loans or financial accommodations under the DIP Financing

Documents have been satisfied in full or waived in accordance with the DIP Financing

Documents.

(f)    **DIP Superpriority Claim.** Effective immediately upon the entry of this

Order, and subject to the terms of the DIP Financing Documents, GE Capital, as adequate

protection and security for the obligations of the Debtors under the DIP Facility and the DIP

Financing Documents, is hereby granted (x) a superpriority administrative expense claim

pursuant to section 364(c)(1) of the Bankruptcy Code superior to any and all administrative

expenses in the Bankruptcy Cases, including, without limitation, any and all administrative

expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code,

including, but not limited to, sections 105, 326, 328, 330, 331, 503(b) 506(c), 507(a), 507(b) and

726 of the Bankruptcy Code (the "DIP Superpriority Claim"); provided, however, that the DIP

Superpriority Claim shall be subordinate to: (i) all unpaid fees of the Clerk of the Bankruptcy

Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), including any interest thereon

payable pursuant to 31 U.S.C. § 3717; plus (ii) an amount equal to the allowed fees and expenses

of retained professionals of the Debtors ("Debtor Professional Fees") incurred before the

delivery of a Carve-Out Trigger Notice (as defined below) that are ultimately allowed by final

order of the Court (whether allowed before or after the delivery of such notice), but solely to the

extent the same are incurred in accordance with the Budget on a cumulative basis with respect to

each professional; plus (iii) all allowed Debtor Professional Fees that are incurred from and after the delivery of a Carve-Out Trigger Notice in an aggregate amount of not more than $50,000; plus (iv) an amount not to exceed $10,000 for the allowed fees and expenses of the chapter 7 trustee in the event any of the Bankruptcy Cases of these Debtors are converted to cases under chapter 7 of the Bankruptcy Code after the occurrence of a Carve-Out Trigger Notice (collectively, the "Carve-Outs").  The "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Lender to counsel for the Debtors following the occurrence of an Event of Default expressly stating that the Carve-Out Expenses have been triggered (the "Carve-Out Trigger Notice").

(g)    **DIP Liens.**  As and for security of the DIP Obligations, GE Capital is granted the following security interests and liens against the assets of the Debtors, all of which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable (collectively, the "DIP Liens"): (i) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority Lien on all assets of the Debtors that are unencumbered as of the commencement of the Cases (other than Avoidance Actions) and all proceeds therefrom; (ii) pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected Lien on all other assets of the Debtors (other than Avoidance Actions), junior only to the valid, perfected and non-avoidable Liens on such assets as of the Petition Date and to valid Liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code and all proceeds therefrom; and (iii) subject to any valid pre-petition Liens other than Liens granted under the Prepetition Loan Documents, pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and 503(b) of the Bankruptcy Code, a claim and Liens on any pre-petition and post-petition improvements.  The foregoing property described in

10

subparagraphs (i), (ii), and (iii) above shall hereinafter be referred to as the "DIP Collateral;" and, collectively with the Prepetition Collateral, and any replacement liens granted in connection with the use of cash collateral, the "Collateral." Notwithstanding anything contained herein, any successful challenge under paragraph 24 hereof shall have no effect on or with respect to the DIP Superpriority Claim or DIP Liens.

(h) **Authorization to Perfect Liens.** GE Capital shall be and hereby is authorized to take any action it deems necessary or appropriate to perfect the liens and security interests granted to GE Capital pursuant to the DIP Financing Documents, the Interim Order and this Order, including but not limited to filing financing statements, all of which shall be deemed to have been filed on the date of entry of the Interim Order.

(i) The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to (i) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to GE Capital under and in connection with the DIP Financing Documents, the DIP Facility and this Order, and (ii) authorize GE Capital to retain and apply payments hereunder.

3. **DIP Lien Priority and DIP Collateral.** The DIP Liens shall have the priorities set forth in this Order and, except as may otherwise be expressly set forth herein, shall in each and every instance, subject to the Carve-Outs and the Prior Liens, be first priority senior liens. The DIP Liens shall secure all of the Debtors' obligations under the DIP Financing Documents and the DIP obligations. Subject to the Carve-Outs and/or the Prior Liens, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Bankruptcy Cases and shall be valid and enforceable against any trustee appointed in the Bankruptcy Cases, upon the conversion of any of the

Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of any of the Bankruptcy Cases. Without prejudice to the rights under paragraph 24 hereof, the GE Capital Liens, the DIP Obligations and the Prepetition Claims and any proceeds, products, offspring or profits of any of the foregoing, shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code..

4.    **Maturity**. The DIP Facility will mature on the DIP Facility Termination Date. All obligations and liabilities of the Debtors to GE Capital that remain outstanding or are in existence on the last day of the term of the DIP Facility shall be due and payable on the DIP Facility Termination Date.

5.    **Enforceable Obligations**. Without prejudice to the rights under paragraph 24 hereof, the DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, the Bankruptcy Estates and any successors thereto and their creditors, in accordance with their terms.

6.    **Use of the DIP Facility**. From and after the date hereof, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Documents, this Order and the Budget.

7.    **Superpriority Administrative Claim Status**. The DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute the DIP Superpriority Claim and be payable from and have recourse to all DIP Collateral. Other than as provided in the DIP Financing Documents and this Order and subject to the Carve-Outs, no costs or expenses

of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Superpriority Claims or the DIP Obligations, or with any other claims of GE Capital arising hereunder.

8.      **Adequate Protection**.  Upon the entry of this Order, and subject to the terms of the DIP Financing Documents, Prepetition Lender is hereby granted, as adequate protection to the extent of any diminution in the value of the Prepetition Collateral as of the Petition Date, including but not limited to any diminution in value resulting from (i) the use of the Prepetition Cash Collateral pursuant to section 363(a) of the Bankruptcy Code, (ii) the use, sale or lease of Prepetition Collateral (other than the Prepetition Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, or (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, in the form of (a) the reimbursement of all reasonable and documented fees and expenses incurred by Professionals for the Prepetition Lender including, without limitation, the reasonable disbursements of counsel and any financial consultant, advisor or expert (the "Lender Professional Fees"), (b) a lien immediately junior to the lien granted to the Lender on the DIP Collateral, (c) subject to the Carve-out Expenses, a superpriority claim under section 507(b) of the Bankruptcy Code, (d) engagement by the Debtors of the CRO; (e) completion of the Exit Milestones and (f) subject to section 363(k) of the Bankruptcy Code to the extent applicable, credit bidding rights in favor of the Prepetition Lender in connection with the sale of any of the Debtors' assets, whether conducted pursuant to section 363 or section 1129(b)(2)(A) of the Bankruptcy Code or otherwise.  Notwithstanding anything in this paragraph

8 to the contrary, in the event that no plan substantially consistent with the Plan Term Sheet (as defined in and attached as Exhibit C to the *Declaration of Dawn Petite, Chief Operating Officer of the Debtors in Support of Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 14]) is confirmed in these Bankruptcy Cases, the Lender Professional Fees may be reallocated by order of the Bankruptcy Court in a manner consistent with section 506(b) of the Bankruptcy Code.

9.      **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents**.  Pursuant to the terms and conditions of this Order, the DIP Facility and the DIP Financing Documents, and in a manner consistent with the Budget (as the same may be modified, supplemented or updated from time to time with the agreement of GE Capital consistent with the terms and conditions of the DIP Financing Documents), the Debtors are authorized to use the advances under the DIP Financing Documents.  The Debtors' rights to use the extensions of credit under the DIP Financing Documents shall terminate upon the earlier of (i) the occurrence of an Event of Default in accordance with the provisions of paragraph 21 hereof, or (ii) upon the occurrence of the DIP Facility Termination Date.  Nothing in this Order shall authorize the disposition of any assets of the Debtors or the Bankruptcy Estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted under the DIP Facility and the DIP Financing Documents (subject to any required court approval).

10.     **Monitoring of Collateral.**  GE Capital shall be permitted to retain consultants and financial advisors at the expense of the Debtors (subject to the rights of all parties in interest to object to the amounts thereof as set forth in paragraph 23 herein), and GE Capital and its consultants and advisors shall be given reasonable access to the Collateral and the DIP Collateral.

14

11.    **Financial Reporting.**  The Debtors shall provide Prepetition Lenders and GE Capital with all financial and other reporting in full compliance with the Prepetition Loan Documents and the DIP Financing Documents.

12.    **DIP Lien Perfection**.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Lien or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, GE Capital may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code for the limited purpose of making such filings, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the Interim Order.  The Debtors shall execute and deliver to GE Capital all such financing statements, mortgages, security agreements, notices and other documents as GE Capital may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens.  GE Capital, in its sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry or recorder of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.  To the extent that Prepetition Lender is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any of the

Prepetition Loan Documents, GE Capital as DIP Lender shall also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Order and the other DIP Financing Documents.

13.     **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or any official committee including, without limitation, the Committee, or shall affect the right of GE Capital to object to the allowance and payment of such fees and expenses.

14.     **Waiver of Claims and Causes of Action.**  Without prejudice to the rights set forth in paragraph 24 below, all claims and causes of action of the Debtors against Prepetition Lender on account of the Prepetition Claims and Prepetition Loan Documents or otherwise, including, but not limited to, any claims for preference, fraudulent conveyance or other claims arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the Prepetition Claims or the Liens are hereby released, relinquished and waived.

15.     **Waiver of Surcharge Rights.**  As a further condition of the DIP Facility and any obligations of GE Capital to make credit extensions pursuant to the DIP Financing Documents, upon entry of this Order, the Debtors and the Bankruptcy Estates (and any successors thereto or any representative thereof, including any trustees appointed in the Bankruptcy Cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against GE Capital, or the GE Capital

16

Liens.  Nothing contained in this Order shall be deemed a consent by GE Capital to any charge,

lien, assessment or claim against the DIP Collateral or the Collateral under section 506(c) or

otherwise.

16.    **No Additional Liens**.  Except for the Carve-Outs, from and after entry of this

Order, unless GE Capital has provided its prior written consent or all DIP Obligations have been

indefeasibly paid in full in cash, there shall not be entered in these proceedings, or in any

Successor Case, any order which authorizes the obtaining of credit or the incurring of

indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or

any portion of the DIP Collateral and/or entitled to priority administrative status which is

superior to or *pari passu* with those granted pursuant to this Order to GE Capital.

17.    **Proceeds of Subsequent Financing**.    Without limiting the provisions and

protections of any part of this Order, if at any time prior to the indefeasible repayment in full in

cash of all DIP Obligations, the Bankruptcy Estates, any trustee, any examiner with enlarged

powers or any responsible officer subsequently appointed, shall obtain credit or incur debt

pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP

Financing Documents, all of the cash proceeds derived from such credit or debt and all cash

collateral shall immediately be turned over to GE Capital in reduction of the DIP Obligations in

accordance with the relative rights, claims, and priorities specified herein and in the DIP

Financing Documents.

18.    **Disposition of DIP Collateral.**    The Debtors shall not sell, transfer, lease,

encumber or otherwise dispose of any portion of the DIP Collateral without the prior written

consent (by email or otherwise) of GE Capital (which shall not be unreasonably withheld or

delayed) required under the applicable DIP Financing Documents, except for sales of inventory

17

in the ordinary course of business or except as otherwise provided for in the DIP Financing Documents and this Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law.

19.     **No Marshaling/Applications of Proceeds.**  GE Capital and the GE Capital Liens shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the GE Capital Liens or any of the GE Capital Collateral.

20.     **Events of Default.**  Subject to the provisions of the DIP Financing Documents and this Order, unless and until all DIP Obligations are indefeasibly paid in full either in cash or by the issuance of the GE Note (as defined in the *Summary of Plan Terms*, dated January 6, 2015 and filed by the Debtors on the Petition Date) (or other arrangements for payment of such amounts satisfactory to GE Capital (in GE Capital's sole discretion) have been made), the protections afforded GE Capital pursuant to this Order and under the other DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a chapter 11 plan or converting these Cases into a case under chapter 7, and the DIP Liens and the DIP Superpriority Claim shall continue in these cases and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priority as provided by this Order.

21.     **Rights and Remedies Upon Occurrence of Event(s) of Default.**  Upon the occurrence of an Event of Default, and after giving any notice and/or opportunity to cure required by the DIP Agreement, GE Capital may settle an order (the "Default Order") on no less than seven (7) days' notice to the Debtors, the US Trustee, any Committee and any other party in interest requesting notice that identifies the applicable Event of Default and provides, among other things, that: (a) the automatic stay under section 362(a) of the Bankruptcy Code shall be

deemed lifted, vacated, modified and terminated with respect to GE Capital; and (b) GE Capital shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Documents (unless within such five (5) day period the Bankruptcy Court determines that no default has occurred and is continuing), including, without limitation, (i) to terminate any obligations of GE Capital under the DIP Financing Documents and/or demand payment, and seek enforcement, of the DIP Obligations then outstanding, and (ii) to take any action, in its sole discretion, necessary to preserve and protect the GE Capital Collateral.  Notwithstanding the immediately preceding sentence, immediately following the giving of notice by GE Capital of the occurrence of an Event of Default:  (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of GE Capital Collateral to GE Capital as provided in the DIP Financing Documents; (ii) GE Capital shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Documents; and (iii) any obligation otherwise imposed on GE Capital to provide any loan or advance to the Debtors pursuant to the DIP Financing Documents shall immediately be suspended.  Notwithstanding anything contained in this Order to the contrary, the Debtors shall have the right to continue to utilize Cash Collateral until and unless the Default Order has been entered, subject to all of the other terms and provisions contained in any order governing such use.  Furthermore, subject to all of above provisions of this paragraph, upon the entry of the Default Order, GE Capital is authorized to exercise its remedies pursuant to the DIP Financing Documents and applicable law.  All proceeds realized in connection with the exercise of the rights and remedies of GE Capital shall be applied to the DIP Obligations and the Prepetition Claims under, and in accordance with the provisions of, the DIP Financing Documents.

22.    **Good Faith Under Section 364(e); No Modification or Stay of this Order.**  GE

Capital is extending credit pursuant to the Order in "good-faith" within the meaning of section

364(e) of the Bankruptcy Code, and the credit advanced by GE Capital pursuant to this Order,

and in connection with the DIP Facility and the DIP Financing Documents shall be deemed to be

advanced in good faith within the meaning of section 364(e) of the Bankruptcy Code and GE

Capital is entitled to the protections afforded by section 364(e) of the Bankruptcy Code and no

such appeal, modification, amendment or vacation shall affect the validity and enforceability of

any advances made hereunder or the liens, rights, claims, or priority authorized or created

hereby.  Notwithstanding any such potential modification, amendment or vacation, any liens,

rights, claims or priorities granted to GE Capital hereunder arising prior to the effective date of

such modification, amendment or vacation of any DIP Liens and DIP Superpriority Claims

granted to GE Capital shall be governed in all respects by the original provisions of this Order,

and GE Capital shall be entitled to all of the rights, liens, priorities remedies, privileges and

benefits, including the DIP Liens and DIP Superpriority Claims granted herein, with respect to

any such claim.  Because the loans made pursuant to the DIP Financing Documents are made in

reliance on the Interim Order and this Order, the obligations owed GE Capital prior to the

effective date of any stay, modification or vacation of this Order shall not, as a result or any

subsequent order in the Bankruptcy Cases or in any Successor Cases, be subordinated, lose their

lien priority or superpriority administrative expense claim status, or be deprived of the benefit of

the status of the liens and claims granted to GE Capital under the Interim Order and this Order

and/or the DIP Financing Documents.

23.    **Expenses of Secured Creditor.**  As provided in the DIP Financing Documents,

the Debtors shall pay all reasonable and documented out-of-pocket expenses incurred by the DIP

Lender (including, without limitation, the reasonable and documented fees and disbursements of counsel for the DIP Lender, any other local or foreign counsel that the DIP Lender shall retain and any internal or third-party appraisers, consultants and auditors advising the DIP Lender), including in connection with the preparation, execution, delivery and administration of the DIP Financing Documents; provided, however, that the legal fees and expenses of counsel to the DIP Lender (on a going forward basis commencing on the Petition Date) shall not exceed $75,000 in the aggregate.   Payment of such fees shall not be subject to allowance by the Bankruptcy Court and shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that GE Capital shall submit copies of its legal counsel's invoices to the Debtor, the U.S. Trustee and any Committee and such parties shall have twenty (20) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any invoice submitted by GE Capital.   Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection, and provide the specific basis for the objection to each such item or category.   If any such objection is not resolved within ten (10) days, a hearing with respect thereto shall be conducted at the next regularly scheduled omnibus hearing in the Bankruptcy Cases.

24.    **Binding Effect.**   The provisions of this Order shall be binding upon and shall inure to the benefit of GE Capital, the Debtors, the Bankruptcy Estates and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Bankruptcy Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.   Notwithstanding anything contained in this paragraph or this Order to the contrary, however, the waivers and agreements contained in this Order concerning, among other

21

things, the Prepetition Loan Documents, the Prepetition Claims, the Liens, and the Collateral

shall not apply to a Committee (or, if no Committee is appointed, the holder of an unsecured

claim) if within: (i) ninety (90) days from the engagement of any counsel for the Committee, or

(ii) within one hundred twenty (120) days following the Petition Date, whichever is earliest, the

Committee (or, if no Committee is appointed, any holder of an unsecured claim) shall have

commenced an adversary proceeding for the purpose of challenging the validity, extent, priority,

perfection or enforceability of the Prepetition Loan Documents, the Prepetition Claims, the

Liens, or the Prepetition Collateral.  In the event a Committee is appointed, such Committee shall

be entitled to use not more than $50,000 of proceeds of the DIP Facility to investigate Liens or

claims in accordance with this paragraph 24, but in no event shall any DIP Proceeds be used to

fund such Committee's objection or challenge to any such claims or Liens.  To the extent any

such adversary proceeding is not timely commenced, all such waivers shall apply to all interested

parties in the Bankruptcy Cases and all interested parties shall be forever bound by all such

waivers.  Further, to the extent that any waiver contained in this Order is not expressly

challenged in any such adversary proceeding, all interested parties in these Bankruptcy Cases

shall be forever bound by such waiver.

      25.    **<u>No Waiver.</u>**  The failure of GE Capital to seek relief or otherwise exercise its

rights and remedies under the DIP Financing Documents, the DIP Facility, this Order or

otherwise, as applicable, shall not constitute a waiver of any of GE Capital's rights hereunder,

thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Order is without

prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any

of the rights or remedies of GE Capital under the Bankruptcy Code or under non-bankruptcy law,

including without limitation, the rights of GE Capital upon an Event of Default (i) to request

22

conversion of any or all of the Bankruptcy Cases to cases under chapter 7, dismissal of the

Bankruptcy Cases, or the appointment of a trustee in the Bankruptcy Cases, or (ii) to propose,

subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan, or (iii) to

exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of GE

Capital, including against any non-Debtor entity.   Neither the commencement of the Bankruptcy

Cases nor the entry of this Order shall limit or otherwise modify the rights and remedies of

Prepetition Lender upon an Event of Default with respect to non-Debtor entities or third parties

or their respective assets, whether such rights and remedies arise under the Prepetition Loan

Documents, applicable law or equity.

26.     **No Third Party Rights.**   Except as explicitly provided for herein, this Order does

not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

27.     **Section 552(b).**   GE Capital shall be entitled to all of the rights and benefits of

section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section

552(b) of the Bankruptcy Code shall not apply to the GE Capital Liens, the DIP Obligations

and/or the Prepetition Claims and/or any proceeds, products, offspring or profits of any of the

foregoing.

28.     **Amendment.**   The Debtors and GE Capital may amend, modify, supplement or

waive any provision of the DIP Financing Documents without further approval of the

Bankruptcy Court on prior written notice to counsel for a Committee (if any), unless such

amendment, modification, supplement or waiver (x) increases the interest rate (other than as a

result of the imposition of the default rate), (y) increases the commitments of GE Capital under

the DIP Financing Documents, or (z) changes the DIP Facility Termination Date (as defined in

23

the DIP Financing Documents) or otherwise materially adversely affect the Debtors or the Bankruptcy Estates.   Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and GE Capital and approved by the Bankruptcy Court.

29.     **Leases.**  Notwithstanding anything in this Order to the contrary, (i) the DIP Lender is not granted liens pursuant to this Order on the leases themselves to the extent prohibited by the leases, but is granted fully perfected liens on the proceeds of such leases, and (ii) with respect to use and occupancy of any leased premises upon the occurrence of an Event of Default, the rights granted the DIP Lender shall not be more extensive than the valid and enforceable rights of the Prepetition Lender under the Prepetition Loan Documents and applicable law.

30.     **Survival of this Order.**  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Bankruptcy Cases, (ii) converting any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Bankruptcy Cases, (iv) withdrawing the reference of any of the Bankruptcy Cases from the Bankruptcy Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Bankruptcy Cases in the Bankruptcy Court.  The terms and provisions of this Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Order and the DIP Financing Documents and any protections granted GE Capital, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claims and protections for GE Capital shall maintain their priority as provided by this Order until all the DIP Obligations and the Prepetition Claims have been indefeasibly paid in

full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).  The DIP Obligations shall not be discharged by the entry of an order confirming a chapter 11 plan the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

31.      **Inconsistency.**   In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Order, the provisions of the this Order shall govern and control.

32.      **Enforceability.**   This Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof

33.      **No Waivers or Modification of this Order.**   The Debtors irrevocably waive any right to seek any modification or extension of this Order without the prior written consent of GE Capital and no such consent shall be implied by any other action, inaction or acquiescence of GE Capital.

34.      **Waiver of any Applicable Stay, including Bankruptcy Rule 6004(h).**   Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

35.      **Retention of Jurisdiction**.   The Bankruptcy Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated:  January 21, 2015
        White Plains, New York

                              /s/ Robert D. Drain
                              UNITED STATES BANKRUPTCY JUDGE